## SLOTHOWER v. HUNTER ET AL.

MINES AND MINING CLAIMS—APPLICATION FOR PATENT—ADVERSE
SUIT—ISSUES—LOCATION CERTIFICATE—RELOCATION OF ABANDONED
CLAIM—JUDGMENTS—APPEAL AND ERROR—DESCRIPTION OF MINING
CLAIMS—EVIDENCE—EFFECT OF FAILURE TO RECORD CERTIFICATE OF
LOCATION WITHIN STATUTORY PERIOD—TRANSFER OF TITLE PEND-
ING PATENT PROCEEDINGS.

1. In the location certificate of a mining claim it was described
   as a relocation of a former claim therein named "aban-
   doned," and as using and appropriating the stakes and
   original survey of the former claim "abandoned." It ap-
   peared that the locators of the new claim were prior to its
   location strangers to the title to the ground embraced
   within the limits of the former claim. The purchaser of
   the claim under such later location, who had been one of
   the locators of the former claim, applied to patent it under
   its new name. Held, that by electing to patent the later
   claim the purchaser adopted its location certificate as the
   basis of and the inception of his title, and in an adverse
   suit his right of possession must be held to have com-
   menced only at the date of the relocation.

2. Where, in the location certificate of a mining claim located
   by strangers to the title to the ground under any previous
   claim, it is described as a relocation of a former claim
   "abandoned" and as using the stakes and original survey
   of the former claim, the location certificate of the former
   claim is competent evidence, in an adverse suit, to show
   the boundaries of the later claim by reference, but would
   not establish title to the ground antedating the location of
   such later claim.

3. In suits to determine the right of adverse claimants to mining
   claims arising out of patent proceedings, pursuant to the
   provisions of Section 2326, U. S. Rev. Stat., not only the
   right of possession as between the parties is in issue, but

also the sufficiency of the showing by the party adversed to entitle him to a patent; and it is incumbent upon each party to show affirmatively his or their title.

4. Where, in an adverse suit to determine the right to a patent to a mining claim, the applicant has shown himself entitled to possession and to patent for a portion of the ground only, the court should so find, although the issues as to the remaining portion are found in favor of the adverse claimant.

5. Where, in an adverse mining suit to determine the right to patent, the trial court decreed a portion of the ground to the adverse claimant, but erroneously failed to dispose of the issues as to the remaining portion which the uncontradicted evidence showed the applicant for patent to be entitled to, the appellate court may, on error, remand the cause with directions to amend and modify the judgment so as to show the applicant to be entitled to possession and patent as to such ground.

6. Land upon which a valid mining location has been made, which has neither been abandoned nor forfeited, is segregated from the public domain, and until some act or laches of the locator or owner occurs by which the title reverts to the government, it cannot be relocated.

7. A certificate of location of a mining claim is fatally defective and void which fails to give the length of the claim along the vein each way measured from the center of the discovery shaft, as required by the statutes of the state. (R. S. 1899, Sec. 2546.)

8. In the statute (R. S. 1899, Sec. 2546) providing that the location certificate of a mining claim shall describe the claim by such designation of natural or fixed objects, or if upon ground surveyed by the United States system of land survey, by reference to section or quarter section corners, as shall identify the claim beyond question, the survey referred to means a completed survey made and approved by proper authority.

9. The existence of natural or fixed objects within the meaning of the statute aforesaid, and the sufficiency of the description of a mining claim with reference thereto in the location certificate, are questions of fact to be determined like any other in the case.

10. A mining claim is a permanent monument, and will be so considered until the contrary appears, when it is mentioned by way of description in the location certificate of another claim.

11. The failure to record the location certificate of a mining claim within sixty days from the date of location, as required by statute, does not render the certificate void; but in case of such failure intervening rights would not be affected.

12. Where a mining claim is once sufficiently marked on the ground and all the other necessary acts of location are performed, a right vests in the locator which cannot be divested by the subsequent obliteration of the marks or removal of stakes, without the fault of the locator.

13. Where the evidence in an adverse suit is conflicting as to what ground was marked as the boundaries of a mining claim, the finding of the trial court will not be disturbed on error.

14. Upon a transfer of title by an applicant for a patent to a mining claim pending the proceedings instituted by him for a patent he is not deprived of the right to conduct the proceedings to a termination, but he becomes a trustee and, as such, holds the title only for the purposes of his application, and upon the issuance of patent the title immediately vests in the grantee.

15. Oral testimony admitted without objection in an adverse mining suit to the effect that a mining partnership existed between one of the adverse claimants and the others who were locators of the claims upon which the adverse was based, is sufficient to sustain a judgment adjudging the title to be in him jointly with the others, as against an objection after judgment that he is a stranger to the record title.

[Decided December 18, 1906.]                (88 Pac., 36.)

ERROR to the District Court, Carbon County, HON. DAVID H. CRAIG, Judge.

Aaron Slothower having applied through the United States Land office for a patent to a mining claim, an adverse claim was filed by F. E. Hunter, R. F. Jones, H. L. Kuykendall and A. M. Woodruff, and they brought suit in support of such adverse claim. From a judgment awarding the plaintiffs a portion of the ground, the defendant prosecuted error. The facts are stated in the opinion.

*Charles E. Winter,* for plaintiff in error.

The judgment is erroneous in adjudging title in Woodruff jointly with the others in the absence of evidence showing that he ever had an interest either by location, discovery or purchase in two of the claims upon which the adverse was based. The evidence fails to support the judgment as to the boundaries of the contested claims. A locator does not lose his rights through the removal of the stakes by others marking the boundaries of his claim. (Lindley on Mines, 375.)

It was error to admit in evidence the location certificate of the Adelaide lode, since it failed to comply with the statute in the matter of description. The land had been surveyed, and hence the section or quarter section corners should have been referred to. State laws not repugnant to the Federal Statute are to be complied with in making mining locations. (Lindley on Mines, 329, and cases cited.)

An unpatented mining claim—a mere prospect with but little work done upon it—is worthless as a monument for reference in describing another claim. The cases holding that a mining claim is not a sufficient permanent monument for purposes of description show the better reasoning and should be followed. (Morrison's Min. Rights (10th Ed.), 49; Baxter v. Patterson, 3 Pac., 741; Drummond v. Long, 13 Pac., 543; Gilpin Co. v. Drake, 8 Colo., 586; Brown v. Levan, 46 Pac., 661.) Moreover, the description in the Adelaide certificate is indefinite even by the reference, since it contains nothing as to dstance from the mines named. (Brown v. Levan, *supra;* Upton v. Larkin, 17 Pac., 728; Metcalf v. Prescott, 25 Pac., 1037; Gamer v. Glenn, 20 Pac., 658; Duncan v. Felton, 61 Pa., 244; Riste v. Morton, 49 Pac., 656; Kinney v. Fleming, 56 Pac., 723; Morrison v. Regan, 67 Pac., 955; McCann v. McMillan, 62 Pac., 33; Seidler v. Lafave, 20 Pac., 789.) The "Little Joe" certificate was clearly inadmissible, for want of sufficient description. The record of the deed from plaintiff in error was inadmissible. It did not appear that the record had any reference to the ground in controversy. The burden of

showing its relevancy was upon the party offering it.  (17 Cyc., 1111.)  Had the plaintiff in error transferred his title pending the proceedings, it would not have interfered with the suit in any way.  The validity of such transfers is recognized by the Land Department.  They do not deprive parties of their right to patent.

*McMicken & Blydenburgh,* for defendants in error.

The evidence was clear that the four plaintiffs owned the adverse claims, and that a mining partnership existed between them.  The oral testimony by which these facts were established may not have been the best evidence, but it was received without objection and cannot now be complained of as incompetent or inadmissible.  (Sentman v. Gamble, 69 Md., 304; Spencer v. Pearce, 10 Gill & J., 294; Slingluff v. Volk, &c., Co., 43 Atl., 759; Blowers v. Ry. Co., 50 S. E., 19; Ashe v. R. Co., 65 S. C., 134; Webb v. Sweeney, 69 N. Y., 200; Rapson v. Leighton, 73 N. E., 540; Damon v. Carroll, 163 Mass., 404; Boyle v. Columbian, &c., Co., 182 Mass., 93; Allen v. Fuller, id., 202; Brighton v. Buffington, 184 id., 401; 5 Curr. L., 1370, and cases cited; Columbian Min. Co. v. Dutchess Min. Co., 13 Wyo., 244.)

The fact that a location certificate is not recorded within the statutory time does not render it void where no intervening rights have accrued.  (Preston v. Hunter, 67 Fed., 996; Zerres v. Vanine, 134 Fed., 610; Min. Co. v. Min. Co., 13 Wyo., 244.)  Mineral ground cannot be considered as upon surveyed ground prior to the approval of the survey, and until such approval it would be unsafe to describe a claim by reference to such survey.  Reference to section corners in such case is, therefore, not required.  A description of a claim by reference to another known mine is sufficient.  A mine will be considered a permanent monument until the contrary appears.  (Morrison v. Regan, 67 Pac., 956; Seidler v. Lafave, 20 Pac., 789; Kinney v. Fleming, 56 Pac., 723; Branlett v. Flick, 57 Pac., 869; Wells v. Davis, 62 Pac., 3; Min. Co. v. Old S. Co., 63

Pac., 587; Book v. Min. Co., 58 Fed., 106; Min. Co. v. Min. Co., 80 Pac., 736; Rista v. Morton, 49 Pac., 656; M. Co. v. Hammer, 8 Pac., 153; Hammer v. M. Co., 130 U. S., —; Smelting Co. v. Min. Co., 95 Fed., 911; Talmadge v. St. John, 62 Pac., 79; Min. Co. v. Min. Co., 13 Wyo., 244.) In suits in support of adverse claims it is not only necessary for the plaintiff to sustain his contentions by preponderance of evidence, but the defendant must also prove his own title, as the government is also a party to the case.

The admission of the record of defendant's deed even if erroneous does not constitute prejudicial error, since it was evidently not considered in the disposition of the case. The evidence fully justifies the judgment rendered by the trial court upon every controverted point.

SCOTT, JUSTICE.

The plaintiff in error made application at the United States Land Office for a patent to the Big Divide lode mining claim. The defendants in error filed an adverse to such application, setting up that the mineral survey of the Big Divide lode took in certain portions of the Little Joe, Adelaide and Little Wonder lode claims, of which they claimed to be the owners, and within the time prescribed by statute brought this suit in support of their adverse claim in the District Court of Carbon County. To prove his record title, the plaintiff in error introduced in evidence a certificate of location of the Great Divide lode mining claim dated August 5, 1897, and recorded November 3, 1897; an amended certificate of location by himself and E. A. Rust of the same claim dated November 1, 1899, and recorded November 6 of the same year; a certificate of location by L. S. Neice, F. A. Neice and Guy Neice of the Big Divide lode, which is said to be a re-location of the Great Divide, dated January 1, 1903, and recorded February 18, 1903. The rights acquired under the location by the Neices were acquired by purchase as appears from the deeds introduced in evidence conveying their interests to plaintiff in error. To prove record title in them the defendants in error introduced in

evidence the original location certificates respectively of the
Little Joe, Adelaide and Little Wonder. For convenience,
reference is here made to the plat, defendants in error's
exhibit "D," which was admitted in evidence and is a part
of the record.

Map of Sur No 294.   Big Divide Lode.
Showing  Conflicts  with
Little Wonder, Little Joe, Modoc, and Adelaide Lodes
Scale 1":200
From  Surveys  by  Robert E. McCoy,
U S Dep. Min.  Surveyor
Nov 30, 1905.

'1. It is urged and assigned as error that the judgment is contrary to law. It is claimed by plaintiff in error that the corners designated H, G, E and A were originally located at the points 1, 2, 3 and 4, respectively, and marked the boundary of the Great Divide as originally located.

Assuming that the original and amended location certificates of the Great Divide were in accordance with the requirements of the statute, the application is to patent the Big Divide, a claim which had no existence until January 1, 1903, the date of its location. The certificate of location of the Big Divide by the Neices recites, "Beginning at corner No. 1, the 'Big Divide' claim is a re-location of the Great Divide claim (abandoned), said Big Divide lode claim using and appropriating stakes and original survey of the Great Divide lode claim (abandoned)." It appears that this location is of an abandoned claim and not an amendatory certificate to correct imperfections in the record title of a claim already in existence. Indeed, the Neices, so far as the record shows, were prior to their location of the Big Divide strangers to the title to the ground embraced within the limits of the Great Divide. By electing to patent the Big Divide, Slothower adopted its location certificate as the basis of and as the inception of his title. The introduction in evidence of the location certificates of the Great Divide was competent as showing the boundaries of the Big Divide by reference, but could not establish title to the ground in controversy antedating the location of the latter. The possessory title initiated by the Neices by their location of the Big Divide was what they conveyed to Slothower, and the title so conveyed was antagonistic to and destructive of any former title which was held by the latter. The recital in their certificate of location to the effect that it "is a re-location of the Great Divide (abandoned)" was an admission that the latter claim had once a legal existence, for there could be no abandonment when there was nothing to abandon. (Blain v. Wills, 20 Pac. Rep., 798.) The purchase of the outstanding title of the Neices

would quiet the title, if any, which Slothower had in and to the Great Divide upon proceedings to patent the latter and the only theory upon which the Neices' re-location can be valid for any other purpose is that Slothower and his joint re-locator, Rust, had abandoned the Great Divide. It cannot be contended upon the record that the Neices could upon application for a patent for the Big Divide have claimed any rights, antedating their re-location, based upon a title which they had destroyed by such re-location. (Cheeseman v. Shrieve, 40 Fed., 789.) And Slothower, their grantee, having applied to patent the claim, title to which he has acquired from them by purchase, and not the Great Divide, which he claims to have originally located and thereafter re-located jointly with Rust, and which has been abandoned as appears by the location certificate of the Big Divide, stands in no better position. It follows that the date of his right to possession to the Big Divide in his proceedings for patent is by relation the date of its location by his grantors, viz.: January 1, 1903. Evidence was also introduced by the plaintiff in error tending to show that he had fully complied with the requirements of the law with reference to this location so as to entitle him to a patent of the ground included within its boundaries. The trial court by its decree and judgment did not pass upon his rights in this respect. The distinction in this class of cases and those in ejectment under the statutes and in trespass is clear. In the latter cases the right of possession and its unlawful violation and damages therefor, if any, as between the parties are the only questions to be determined, while in the former the right of possession as between the parties and also the sufficiency of the showing by the party adversed to entitle him to a patent is in issue. This action is brought under the provisions of Section 2326, Revised Statutes of the United States, and it was incumbent upon each party to show affirmatively his or their title. (Jackson v. Roby, 109 U. S., 440; Rosenthal v. Ives, 2 Ida., 244; Iba v. Central Ass'n., 5 Wyo., 355.) Under this section, "upon filing of

the adverse claim all proceedings in the land office are suspended until the determination of a court of competent jurisdiction is reached, or until it is shown that the adverse claimant has not brought suit upon his adverse claim within the time fixed by law." (Iba v. Central Ass'n., *supra.*) In the same case this court further said, Groesbeck, C. J., delivering the opinion: "The judgment of the court must be filed in the land office, and until that is done, or a showing is made that the adverse claimant has not brought his suit within the time limited by statute, or has not prosecuted the same with diligence, all proceedings are stayed in the land office. * * * The ordinary rule in such actions that the plaintiff must recover upon the strength of his own title, and that otherwise the defendant is entitled to judgment, does not govern in these actions when application for patent to mining claims has been made, an adverse claim has been filed thereto, and the matter has been transferred to a court of competent jurisdiction for determination where not only the title of the parties to the controversy is to be settled, but the rights of the government as against either or both the parties is to be determined, that is, that the plaintiff has the title, or that the defendant has it, or that neither of them has it." We are of the opinion that the court erred in failing to find upon the issue of possession and the right to patent so much of the ground included within the boundaries of the Big Divide as shown by the plat, excluding that part the possession to which was decreed to the defendants in error. As there is no conflict in the evidence, and the possession and right to patent this ground is supported by the evidence, a contrary finding and decree would be unsupported by any evidence, and for that reason we do not think it necessary that the case should be tried *de novo* upon these issues.

2. The question arises whether the defendants in error had acquired any possessory title under and by virtue of their claim of location at a prior date to the ground or any part thereof included within the boundaries of the Big Divide. Land upon which a valid mining location has been

made, and which claim has neither been abandoned nor forfeited, is segregated from the public domain, and until some act or laches of the locator or owner occurs by which the title reverts to the government it cannot be re-located. It may be conceded that if the Great Divide was a subsisting valid mining location or claim at the time of the location of the Little Joe, Little Wonder and Adelaide mining claims, and that the latter claims overlapped the Great Divide, then in so far as they conflicted with the Great Divide their locations were void; and also that they were void if the law with reference to their location has not been compiled with. The certificates of location of these claims were admitted in evidence over the objection of the plaintiff in error and we will consider them in the order named.

The certificate of location of the Little Joe is fatally defective and void in that it fails to give "The length of the claim along the vein each way measured from the center of the discovery shaft," or to mention the discovery shaft at all. These are statutory requirements (Sec. 2546, R. S. 1899), and the failure to so state renders the certificate void. (Sec. 2547, R. S. 1899.) The certificate, therefore, vested no title in the defendants in error and it was erroneously admitted in evidence.

It is urged that there is no sufficient tie or description of the Adelaide as required by Section 2546, Revised Statutes 1899; and that the certificate was not filed within the time required by statute. That section (Subdivision 6) provides that the certificate shall contain "A description of the claim by such designation of natural or fixed objects, or if upon ground surveyed by the United States system of land survey, by reference to section or quarter section corners, as shall identify the claim beyond question." Section 2547 id. is as follows: "Any certificate of the location of a lode claim which shall not contain fully all the requirements named in the preceding section, together with such other description as shall identify the lode or claim with reasonable certainty, shall be void."

It appears from the record that the government survey of the ground in the vicinity of these claims was made in the summer of 1898, but was not approved until some time in May, 1900. The quarter and section corners do not come within the class designated as natural objects, nor were they fixed or permanent until the survey was approved, for prior to such approval they were subject to be removed or destroyed and a re-survey made if the survey was found to be incorrect. We are of the opinion the survey referred to in Section 2546, *supra,* means a completed survey by the proper authority.

The certificate of the Adelaide says that "It is situated in Battle Lake and Upper Platte Mining District, County of Carbon and State of Wyoming," and, also, "Further described as laying west of the Little Wonder mining claim and south of the Little Giant mining claim." It will be observed that the location certificate gives the name of the state, county and mining district within which the claims referred to as ties are located. Though the distances are not given, the direction of each is set forth, and whether adjoining or not, the intersection of the corners so given would, so far as the certificate is concerned, be upon ground included in the Adelaide. The existence of a natural or fixed object within the meaning of the statute and the sufficiency of the description of the location of a mining claim with reference thereto, we think, are questions of fact to be determined like any other in the case. (Bonanza Con. Min. Co. v. Golden Head Min. Co., 80 Pac., 736.) The evidence was before the trial court and the certificate referred to other mining claims to which the Adelaide was tied. No evidence was offered by the plaintiff in error to show that these claims did not exist. A mining claim is a permanent monument, and when such claim is mentioned in a location certificate it will be so considered unless the contrary appears. (Riste v. Morton et al., 49 Pac., 656; Hammer v. Garfield M. & M. Co., 130 U. S., 291.) The objection that the certificate was not recorded within sixty days

from the date of the location does not vitiate the certificate or render it void; the only effect of a failure to record within the statutory time is that it cannot affect intervening rights. (Preston v. Hunter, 67 Fed., 996; Zenes v. Vanena, 134 Fed., 610; Columbia M. & M. Co. v. Duchess Min. Co., 13 Wyo., 244.) *Prima facie,* the certificate measured up to the requirements of the statute and was admissible, and the court did not err in receiving it in evidence.

No objection was interposed to the admission of the location certificate of the Little Wonder on the ground that it failed to comply with the provisions of the statute, but it is urged that all of these claims included ground covered by the Big Divide location, and that the ground included in such overlapping portions was not open to location at the time the defendants in error initiated their claims. In so far as the Little Joe is concerned, the location certificate being void, no rights were acquired by it and the question is narrowed down to a consideration of the alleged conflict between the Little Wonder and the Adelaide with the Big Divide. It is not seriouly contended that the location of the Great Divide was up to the time of its abandonment invalid for any reason, but it is claimed by defendants in error that its south boundary was originally marked as it appears in the official survey for entry. The Big Divide as shown by the plat of this survey runs lengthwise N. 74° 56′ W. The Little Wonder as also shown by the same plat runs N. 80° W., and its north side laps over on the south part of the Big Divide at the west end 57.88 feet and the east end 206.39 feet. The plat also shows that the lap on the east end of the Great Divide is 163.44 feet and the north boundary line of the Little Wonder crosses and runs out of the south boundary of the Great Divide at the point marked C. The east end line of the Adelaide overlaps and takes in part of the west end of both the original Great Divide and the Big Divide in the form of a triangle. The contention is that the Big Divide as surveyed for entry is identical with the Great Divide as originally located and of which it is a re-

location; that the official survey of the Big Divide shows correctly the ground included in the Great Divide location. Such official survey of the Big Divide for patent as shown by the evidence coincides with the survey for and is included in the description given in the amended location certificate of the Great Divide made November 1, 1899, with the exception that about 250 feet is dropped off from the west end by the official survey. On the other hand, defendants in error claim that the south side line of the Big Divide as fixed by such amended and official survey is erroneous farther south and takes in a strip on the north side of the Little Wonder which was never included in the original Great Divide. Defendants in error claimed no rights upon the trial by reason of the alleged abandonment of the Great Divide, nor to any of the ground covered by such location as originally located. It is true that possession of so much of the ground of the Little Wonder and also of the Adelaide as conflicts with the Great Divide location as shown by the plat is decreed to the plaintiff in error, but the defendants in error are not here as complainants. As to when, if ever, the Great Divide was abandoned is not here involved, nor is the sufficiency of the location certificates of that claim prior to the amended location certificate of November 1, 1899, involved, except in so far as they throw light upon what constituted the boundaries of that claim. The question was one of conflict and turned upon where the southwest corner, south side center and southeast corner stakes were as originally located marking the south side line of the original Great Divide, and to this question the evidence was chiefly directed. The evidence was conflicting. Slothower testified that when he located the Great Divide he made the measurements with a tape line, and set these stakes; that the southwest corner was a pine stake, that the southeast corner was a pine stake, and that he measured south from the discovery 150 feet and set the south side center stake; no surveying instrument was used, and that the ground was rough, dropped about 40

feet in 100 feet south of the discovery; that it was a difficult country to do anything over with a tape line, as there was heavy down timber. That the south side center stake was not at right angles to the trend of the vein as measured from the discovery is apparent from an inspection of the plat. The testimony of all the witnesses is to the effect that the claim was short on the west of the discovery and very much so, nor were the stakes found where they ought to have been had Slothower measured the distance correctly. It was Slothower's intention as shown by his evidence to locate his claim as a parallelogram. No witness testifies that the south side center stake was 150 feet distant from the discovery on a line parallel to the end lines of the claim or upon a line at right angles to the south side line. All place it approximately on a line between the southeast and southwest corners, and Slothower says he staked the claim in straight lines. This evidence accords with the description given in the certificate of location, for if the claim was not staked in the form of a parallelogram this so-called south side center stake would not be a side center stake as it purports to be in the certificate made and filed by Slothower. We think from the evidence the trial court was justified in finding that the so-called south side center stake was on a straight line between the southeast and southwest corners of the Great Divide as originally located, or on the line A and E as that line is drawn on the plat, and if the court did not err in determining the location of the points A and E the decree and judgment must stand. The amended certificate of location was filed on November 1, 1899, the survey for which was made by the witness McCoy, assisted by plaintiff in error. The latter testifies that while this survey was being made he discovered that the stakes marking the south boundary were not in the places which he had originally placed them and that he brought them from the points to which they had been moved and they were re-set in accordance with the measurements of the survey. McCoy, upon being questioned as to where

plaintiff in error got the stakes, says he did not know. In this way the southeast corner stake, according to the plaintiff in error's testimony, was moved from the point 4 on the plat and that the south side center stake was moved south of the point where it was found, though the exact distance is not given; Slothower says not more than four or five feet, and it is unreasonable that McCoy should not have known where Slothower got this stake if it was found so close to the point where it was re-set. Upon this survey the southwest corner stake was not found and a new stake was made and placed at the point determined by the measurements for that corner. The evidence is conflicting as to how this corner was originally designated or marked. Several witnesses testify that they saw at different times a spruce or balsam tree marked "S. W. cor. Great Divide," while Slothower testifies that he placed a stake at that corner and that he marked no tree to designate the exterior boundaries of the claim except at the center of the east end line; and also that the stakes at the points 1, 2, 3 and 4, as shown upon the plat, had been originally placed at these points, but had been moved to the points H, G, E and A, respectively. Plaintiff in error contends that, having properly marked and located his claim, his rights could not thereafter be divested. It may be conceded that he is right in this contention. "Where a mining claim is once sufficiently marked on the ground and all the other necessary acts of location are performed a right vests in the locator which cannot be divested by the subsequent obliteration of the marks or removal of stakes, without the fault of the locator." (Lindley on Mines, Sec. 275, and cases there cited.) The question here was, what ground was marked by Slothower in his original location, and upon this issue the trial court heard the evidence and had the witnesses before it and was the sole judge of their credibility and the weight of the evidence. The evidence was conflicting and the court found upon this issue in favor of the defendants in error. The rule is well settled that in such a case the finding of the trial court will not be disturbed.

3. It is urged that the court erred in decreeing possession of any of the ground claimed by plaintiff in error to defendants in error and included within the boundaries of the Adelaide as shown by the plat. In the description in the decree that part within the boundaries of the Great Divide overlapped by the Adelaide is not included. Conceding that he is entitled to the possession of all the ground included within the boundaries of the Big Divide, and that the boundaries of that claim are identical with those of the Great Divide (abandoned), and which was awarded him by the court, the error is predicated upon the assumption that the southwest corner of the Great Divide was originally located at and identical with the corner marked No. 3. On this point, however, the court as already stated found adversely to his contention and the decree was in accordance with the finding.

4. It is also urged that the court erred in admitting in evidence the deed from Slothower to the Investors' Mining and Prospecting Company. This deed showed that Slothower had parted title with the property involved in this case. It, however, appears to have been executed pending proceedings for a patent and was not such a parting of title as to have deprived him of the right to maintain this suit. He was a party to the proceeding in the land office and the adverse was against the title he was attempting to establish in such proceeding. A transfer of title by an applicant for a patent during the pendency of the application has the effect of making him a trustee and as such he holds the title only for the purposes of such application, and when patent is issued the title immediately reverts to his grantee. It was error to have admitted the deed in evidence, but we think, in view of the decree which excluded from defendants in error the right to possession of certain parts of the ground in dispute, to-wit: A, B, C, as shown by the plat, and which could not have been done upon any theory as to the effect of the deed other than as stated above, it seems to have worked no prejudice to plaintiff in error.

5. Upon the trial the record evidence of title to the Adelaide showed that title to be in Hunter, Jones and Kuykendall, the original locators. The title by the decree is adjudged to be in Woodruff, Hunter, Jones and Kuykendall. It is urged that as Woodruff is a stranger to the record title of the Adelaide, though it appears that he was one of the original locators of the Little Wonder, that the decree is erroneous and unsupported by the evidence in so far as he is decreed title in the Adelaide jointly with the other defendants in error. Oral testimony was admitted without objection to the effect that there was a mining partnership existing between them and that the Little Wonder, and Adelaide, the mining claims in controversy, were owned by the partnership. This evidence also applied to the Little Joe, but as we have held that location to be void, we need not further consider that claim. No objection or exception was taken to this method of proof to title in Woodruff. It may be conceded that it was not the best evidence and might have been objected to on that ground, but in the absence of such objection that ground was waived, and the evidence went into the case not as void or having no weight, but as a substitute for that which might have been insisted upon by timely objection. (Sentman v. Gamble, 69 Md., 304; Slingheff v. Andrew Volk Builders' Sup. Co., 43 Atl., 759; Blowers v. Southern Ry. Co., 50 S. E., 19; Ash v. R. R., 65 S. C., 134; Webb v. Sweeney, 69 N. E., 220; Rapson v. Leighton, 73 N. E., 540; Damon v. Carroll, 163 Mass., 404, and many other cases could be cited to the same effect.) In principle this rule was applied by this court in Columbia Min. Co. v. Duchess Min. Co., 13 Wyo., 244, *supra,* where parol evidence was admitted to prove the contents of location certificates which were recorded and this court said: "This evidence was introduced and no objection appears to have been made that it was not competent not being the best evidence." The oral testimony was inadmissible only as against an objection upon the ground stated, and, the record failing to disclose any such objection, it went into the case for all purposes and was sufficient to support the decree.

6.   We do not think it incumbent upon this court to send this case back to the trial court for a new trial.   The location certificate of the Little Joe being void, no right of possession by virtue thereof, upon any theory of the case, vested in the defendants in error as against Slothower to any ground included within the boundary of his location, and who, if entitled to the possession of any part of the Great Divide as originally located and relocated as the Big Divide, was entitled to the whole of the ground included within its boundaries.   By the decree he was given this right except as to that part alleged to be overlapped by the void location of the Little Joe, and in this respect the decree should be modified.   The plaintiff in error was entitled to a finding and judgment upon his showing, there being no evidence to the contrary that he was entitled to the possession of the ground actually included within the boundaries of the Big Divide as surveyed for patent lying north of the line A and E as shown on the plat, and that he had expended the required amount in development and done and performed all other acts required and necessary to establish his right to a patent to the same.   The case is remanded to the trial court with direction to amend and modify its decree and to render judgment in accordance with this opinion.   It is so ordered.

POTTER, C. J., and BEARD, J., concur.