[No. 16626.    Department One.    May 15, 1922.]

EVELYN NOBLE, *Appellant,* v. P. B. STRAVENS *et al., Respondents.*[1]

MORTGAGES (15, 23)—ABSOLUTE DEED AS MORTGAGE—AGREEMENT TO RECONVEY—EVIDENCE—SUFFICIENCY. There was an absolute conveyance with right to repurchase, and not a mortgage, where a warranty deed was given to one who paid off a mortgage on the land and other obligations of the grantor, the grantee executing a written agreement giving the grantor the right to repurchase within a specified time; it appearing that the grantor leased the premises from the grantee for a time, and then surrendered possession to the grantee and allowed the time to repurchase to expire.

Appeal from a judgment of the superior court for Whitman county, McCroskey, J., entered February 11,

[1]Reported in 206 Pac. 840.

1921, dismissing an action for equitable relief, tried to the court. Affirmed.

*Weldon & LaFollette* and *Neill & Sanger* for appellant.

*Hanna, Miller & Hanna* and *F. L. Stotler (J. N. Pickrell,* of counsel), for respondents.

PER CURIAM.—In April, 1914, the appellant was the owner of a certain described tract of land in the city of Colfax, Washington, on which there was a hotel building. The property was incumbered by a mortgage, on which there was due in principal and interest some $7,777. There were also unpaid taxes and unpaid street improvement assessments which were liens upon the property. The appellant was also indebted to one Ed. Stravens, a son of the respondent P. B. Stravens, in the sum of $900, evidenced by a promissory note, and owed a further sum to a bank of which P. B. Stravens and Marion Freeman were officers and stockholders, which was secured by a mortgage upon her dwelling house; the whole of the indebtedness aggregating $9,776.85. The holder of the mortgage on the hotel property had instituted foreclosure proceedings. This mortgage had formerly been the property of the bank mentioned, and had been assigned by it to its then holder. The respondents Stravens and Freeman, evidently feeling that there was some moral obligation on the part of the bank to protect the holder against loss on the mortgage, and desiring to protect the note of Ed. Stravens, of which the bank had possession, approached the appellant with a view to adjusting the indebtedness. As a result of the negotiations between them the appellant conveyed by warranty deed the hotel property to Stravens and Freeman, and they, in turn, paid the obligations mentioned, procured and

turned over to her the evidences thereof. They also at the same time executed and delivered to her a writing to the effect that they would reconvey the property to her in case she repaid the principal sum of $9,776.85, with interest thereon at the rate of ten per cent per annum, within two years.

The evidence is not very clear as to the transactions immediately following the execution of the writings mentioned. It seems that the property was then in the possession of one Moore, who was holding under a lease from the appellant. He continued in possession for a short time, when he disappeared. The furniture in the hotel had been purchased by the respondent on credit and was covered by a chattel mortgage, and Moore, during his incumbency, paid rent both to Stravens and Freeman and to the appellant. After the disappearance of Moore, the property was leased for a short time to one Fraser, but on what terms does not appear, the evidence going no further than to make mention of the fact. The property was then leased by Stravens and Freeman to the appellant. On May 22, 1915, while the appellant was in possession, the mortgagee holding the mortgage on the furniture threatened foreclosure, and to prevent this Stravens and Freeman paid the mortgage, amounting to the sum of $2,212.60, and took a bill of sale for the furniture from the appellant. At this time they entered into an agreement with her whereby she was given the right to repurchase the furniture at the sum paid, with interest, at the time she should repurchase the real property; the contract providing that she could not repurchase the one without repurchasing the other. On April 20, 1916, another agreement was entered into extending for six months the time in which the appellant might repurchase the property. Later on, the exact time not appearing, the

appellant surrendered the property to the respondents, and at the same time delivered over the keys to the hotel. On November 3, 1916, the property was leased by Stravens and Freeman to the respondent Arthur H. Eldridge. While he was in possession as a tenant, the appellant made claim to certain fixtures and personal property in the hotel which she contended were not included in the bill of sale, valuing the property at $500. The respondents settled this difficulty with her by paying her $400 in cash. The appellant at no time offered to repurchase the property.

On January 1, 1920, the respondents Stravens and Freeman contracted to sell the property to the respondent Eldridge. The purchase price agreed upon was $25,000. Of this sum Eldridge paid $1,000 on the principal, and agreed to pay the balance in monthly payments of $150 each, with interest on the deferred payments at the rate of seven per cent per annum, also payable monthly.

After this contract was entered into, the appellant instituted the present action, praying a decree declaring the deed and contracts to be a mortgage, that the respondents be required to account for all moneys received and expended by them, that they be required to foreclose the mortgage for any balance found due them, and that the appellant be granted the right of redemption. Issue was taken on her complaint and a trial had, which resulted in a dismissal of the action; the court finding the transaction to be one of sale with a right to repurchase within a limited time.

The only question involved is whether the transaction between the appellant on the one side and Stravens and Freeman on the other is what upon the face of the written instruments it purported to be, namely, an absolute conveyance of the property with a right of

repurchase within a given time, or whether it was a loaning and borrowing of money with a conveyance of the property as security. While the oral testimony varies somewhat widely, we think it fairly sustains the conclusion of the trial court that the former rather than the latter of these differing contentions expresses the true intent of the parties. The appellant had been unable to procure a new loan on the property sufficient in amount to take up the then outstanding obligations against the property, and had been unable, either through tenants or by her own personal management, to make it yield sufficient revenue to take care of its cost of upkeep and meet the fixed charges against it. There was no great difference between the actual value of the property and the price paid for it. While the appellant says it was then worth $35,000, and was able to produce a real estate agent and a contractor and builder who severally testified that its value then was between $20,000 and $25,000 yet it is apparent that these are grossly excessive estimates. Had it been even of the lesser of these values seemingly there would have been no serious difficulty in procuring a new loan, and clearly it could have been disposed of so as to leave a handsome margin. Further evidence is found in the fact that, subsequent to the execution of the instruments, the appellant found it impossible under her own supervision to extricate it from its difficulties. Nor during the several years that elapsed between the time she surrendered up possession and the time it was finally sold to the respondent Eldridge did she ever tender the sums the holders of the deed had invested in it. Had there been any great difference between the value and this sum, surely the cupidity of some one would have brought them to her aid and induced at least an offer for the property.

We think, too, that the oral evidence of the negotiations between the parties leading up to the execution of the first of the written instruments tends to support the conclusion that the writings expressed the intent of the parties. When the appellant was approached on the matter she at first declined to execute a deed and take a contract for the repurchase of the property, insisting that her obligation be taken for the money due secured by a mortgage on the property, and it was only after the other parties positively declined to enter into that arrangement that she consented to an execution of the instruments. True, she now says that she was advised by her counsel that the instruments were nothing more in effect than a mortgage, and that she signed them with that understanding. But this does not aid her. A deed in the form of an absolute conveyance, accompanied by a contract giving the right of repurchase, will not be given the effect of a mortgage unless it clearly appears that such was the intent of all of the parties thereto. An erroneous construction of the effect of the instruments by one of the parties, even though confirmed by legal advice, will not have that effect.

Another circumstance which tends strongly to support the conclusion of the trial court is that the appellant in no manner bound herself to repay the obligations assumed and paid by the grantees in the deed. Nor did she bind herself to repurchase the property. Manifestly, if they should now foreclose, their right of recovery would be confined to the property. If it failed to bring sufficient to satisfy the sums they have invested in it no recovery over could be had against the appellant.

The authorities cited we shall not review. The legal principles they announce do not conflict with the principles we announce here. Their application depends on

the view taken of the facts, and to cite and review them would at best be only illustrative.

The judgment, we conclude, is correct and will stand affirmed.