## McFADDEN v. FRENCH, ET AL.
### (No. 1038; Decided Apr. 2nd, 1923; 213 Pac. 760)

DEED—CONVEYANCE—EVIDENCE OF INTENTION THAT DEED SHOULD
OPERATE AS A MORTGAGE—ILLNESS OF WITNESS AT TRIAL.

1. The findings and judgment of a trial court, based upon con-
flicting evidence will not be disturbed on appeal.
2. To establish an intention that a deed, absolute on its face,
and unaccompanied by any written stipulation for re-
conveyance, should operate as a mortgage, such intention
must be shown by clear, unequivocal and convincing
evidence.
3. Upon the trial of an issue as to whether an absolute con-
veyance was intended to operate as a mortgage, incon-
sistent statements made by plaintiff subsequent to the de-
livery of the deed, are not admissible for the purpose of
changing the character of the instrument, but may be re-
ceived as tending in some degree to show the original in-
tention of the parties.
4. Whether the cross-examination of a witness should be de-
ferred by a court recess, requested by counsel, on account
of an alleged indisposition or illness of the witness, is a
matter largely within the discretion of the trial court,
who, from observation of the conduct and appearance of
the witness, is better able to form an opinion as to his
condition, and a denial of such request will not be ques-
tioned in the absence of an apparent abuse of discretion.

ERROR to the District Court, Carbon County; HON. V. J.
TIDBALL, Judge.

Action by Raymond A. McFadden against A. W. French
and others, praying that a deed of conveyance be decreed
as having been intended by the parties to operate as a mort-
gage, and for other equitable relief. Judgment for defend-
ants and plaintiff brings error. The material facts are
stated in the opinion.

*Thomas Hunter, John R. Smith, Hartley B. Woods* and
*George J. Lemmon,* for plaintiff in error.

It is conceded that the deed is absolute on its face, but a
court of equity will look beyond the external form to ascer-

tain the intention of the parties. (Sweet v. Parker, 22 N. J. Eq. 453; Campbell v. Dearbourn, 109 Mass. 130; Holton v. Meighen, 15 Minn. 50; Pierce v. Robinson, 13 Calif. 116.) The case calls for the application of the equitable doctrine "once a mortgage always a mortgage." The intention of the parties must govern. (Pomeroy Eq. Jr. Secs. 1192-1196; Russell v. Southard, 12 How. (U. S.) 139.) Where the evidence creates a doubt, the court will declare the instrument a mortgage. (Stinchfield v. Miller, 71 Me. 576; Campbell v. Dearbourn, 109 Mass. 130; Bud v. Van Orden, 33 N. J. Eq. 143; Houser v. Lamont, 55 Pa. St. 311; Holton v. Meighen, 15 Minn. 50; Fort v. Colby, 165 Iowa 95, 144 N. W. 393; Pierce v. Robinson, 13 Calif. 116; Clark v. Henry, 2 Cowen, 324; Rakin v. Martimer, 71 Pa. St. 372.) The amount advanced was exactly equal to the amount of a prior loan upon the property, a circumstance indicating that defendants really took up the loan. (Fort v. Colby, 165 Ia. 95, 144 N. W. 393; Ewart v. Walling, 42 Ill. 453.) The negotiations between the parties were for a loan,—also an important circumstance. (Cherry Co. v. Bowen, 4 Sneed (Tenn.) 415; Jones Mtg. 6th Ed. 203; Harper's Appeal, 64 Pa. St. 315.) Possession was retained by grantor, another circumstance indicating the real intention of the parties. (Reigard v. McNeil, 38 Ill. 400; Stover v. Bounds, 1 Ohio St. 107.) Defendant was a lender of money. The relative stations in life of the parties should be considered. (Richardson v. Barrick, 16 Ia. 407; 3 Watts & Serg. (Pa.) 384; Villa v. Rodriquez, 12 Wall. 323; Stinchfield v. Miller, 71 Me. 567; Wagg v. Herbert, 215 U. S. 546.) The value of the land should also be considered. The trial court erred in its findings and decree that the conveyance was intended to operate as an absolute sale since all of the evidence and the circumstances of the transaction indicate that it was intended as a mortgage to secure a loan.

*N. E. Corthell,* for defendants in error.

A finding and judgment of a trial court based upon conflicting evidence, will not be disturbed. (Slothower v. Hun-

ter, 15 Wyo. 189; Riordan v. Riordan, 16 Wyo. 363; Hount
v. Strickland, 17 Wyo. 526; Hunt v. Laramie, 26 Wyo.
160.)   The action is in the nature of one for the reforma-
tion of a written contract, and must be governed by prin-
ciples relating thereto, that is, the proof of intention, or of
fraud, must be clear and convincing.   (Kahn v. Ins. Co.,
4 Wyo. 476; Wallace v. Skinner, 15 Wyo. 253; Stoll v.
Nagle, 15 Wyo. 86; Travelers Ins. Co. v. Henderson, 69
Fed. 762; 3 Pomeroy Eq. 1376; 34 Cyc. 905; 27 Cyc. 1017;
Coyle v. Davis, 116 U. S. 108; Pope v. Hoopes, 90 Fed. 451.)
The reformation of a deed, absolute on its face, into a mort-
gage or a simple security stands on the same footing with
that of the reformation of any other instrument.   (34 Cyc.
923; Cadman v. Peter, 118 U. S. 73; Zuver v. Lyons, 40 Ia.
510; Sloan v. Becker, 34 Minn. 491; Howland v. Blake, 97
U. S. 624; McFadden v. Heison, 175 Pac. 814; Anderson v.
Stewart, 117 N. E. 743; Gassert v. Bogk, 19 Pac. 281; 3
Pomeroy Eq. Jr. 1196.)   Declarations or admissions of the
parties made after the transaction are not entitled to great
weight, unless explicit and positive, and indicating the in-
tention.   (27 Cyc. 1017-1028; Laudauer v. Cummings, 57
Ill. 195.)   The settled rule is that evidence to establish a
deed, absolute on its face, intended to be a mortgage, must
be clear, satisfactory and conclusive and not made up of
loose and random statements.   (Ensminger v. Ensminger,
39 N. W. 208.)   In the case of Russell v. Southard, 12 How.
139 cited by plaintiff in error, there was a contract for re-
demption and the same may be said of nearly all of the other
cases cited by plaintiff in error, and for that reason, they
are not in point in the present case.   The contention that
all doubts should be resolved in favor of the mortgage and
against the deed is limited to the narrow issue between a
conditional sale and a mortgage where it is established that
it is either one or the other.   The presumption prevails in
cases of this class, that a written instrument is what it pur-
ports to be.   The lapse of nine years from and after plain-
tiff's ejection from the premises before commencing this

action is incongruous, if he supposed himself to be an equitable owner of the property. The sudden change in the estimated value of the property due to the discovery of oil in the neighborhood shortly before this suit was brought, is the sufficient and compelling explanation of the numerous inconsistencies in plaintiff's attitude in the case. For example, his claim that the deed was forged and that he had not executed the deed at all.

There is evidence to sustain the judgment and it should not be disturbed.

Kimball, Justice.

On April 30, 1910, the plaintiff, Raymond A. McFadden, by warranty deed absolute in form conveyed certain land in Carbon County, Wyoming to the defendants A. W. French and Nellie F. Wilson. In March, 1919, claiming that the deed was intended as a mortgage to secure a debt, the plaintiff commenced this action asking to have an accounting of rents and profits and to be allowed to redeem the land. The defendant grantees, who were brother and sister, denied that the deed was given as a mortgage or as security and asserted that it was intended as an absolute conveyance. The contentions of other defendants, who claimed interests as lessees of French and Wilson need not be noticed. The findings and judgment were for the defendants and the plaintiff has the case here by proceeding in error.

In March, 1908, the plaintiff owned the land in question subject to a mortgage for $500 with accrued interest, and to satisfy that mortgage, he then gave another to John H. Lewis for $1000. In 1909 Lewis foreclosed, purchased the property at the mortgage sale, and after the expiration of the redemption period received the sheriff's deed. Afterwards, by a suit the exact nature of which is immaterial, McFadden questioned the regularity of the foreclosure, and in February, 1910, in settlement of this suit, it was agreed that McFadden have until April 30, 1910 to redeem the

property by paying Lewis the amount due him, which was then about $1475. A quit-claim deed from Lewis to McFadden was placed in the hands of McMicken & Blydenburgh, attorneys for Lewis, who were to deliver it to McFadden on payment of the money. The right to redeem in this way was the only right which McFadden had or claimed at that time. He testified to his many efforts to borrow the money with which to make this payment, but as he was without any property to offer as security except the land which was thus subject to redemption, he was unsuccessful. On April 28, while still seeking some one who would lend him the money, he was introduced to defendant French who told him he had no money to invest, but suggested that his sister, Mrs. Wilson, might have, and that they see her. They then called on Mrs. Wilson, a widow, who supported herself and three children with her earnings as a school teacher and the income from a few thousand dollars which she usually kept invested in well secured loans. She, like her brother, had had no previous acquaintance with plaintiff, and neither of them was familiar with his land. On being introduced to Mrs. Wilson by her brother the plaintiff made application to her to borrow the money he desired, and the testimony as to what followed at this meeting is conflicting.

Mrs. Wilson and French testify that immediately on learning that the plaintiff needed the money to pay off a mortgage that was being or had been foreclosed, she said there was no use for them to go any further, as she would not make a loan under those circumstances; that plainitff then explained how his land was partly included in the site of a proposed reservoir to be built within a year, and had a special speculative value because it would be necessary for the reservoir company to pay a good price in order to get the land which it needed, and that he said he would rather give the land away than have Lewis get it. The defendants claim that then it was suggested by one or the other of them that they investigate further with a view to buying the land; that it was arranged that the plaintiff and French would

look over the land the next day, and if, after this investigation, French approved of the purchase he and Mrs. Wilson jointly were to buy the property.

The plaintiff's testimony as to the same conversation is to the effect that Mrs. Wilson agreed to let him have the money on his promise to repay it with $1000 as bonus and interest. As to the time of re-payment, his testimony was not clear. He first testified that the money was to be repaid when the land was sold, and afterwards testified that it was to be repaid when the reservoir was built, which he was then sure would be within a year. He finally said he was to make repayment within a year, as he figured the reservoir would surely be built in that time, and it might fairly be inferred from his whole testimony on this point that he neither promised nor intended to repay unless the reservoir was built, which has never been done.

The following day, April 29, the plaintiff and French together examined the land, and French testifies that it was then finally agreed that he and his sister should have the land in consideration of their payment of the amount due from plaintiff to Lewis, with the further oral agreement that if the reservoir were built they would pay plaintiff the additional sum of $500. It was understood that either French or Mrs. Wilson would meet plaintiff at Rawlins on April 30 to close the transaction.

Both French and Mrs. Wilson were without funds, and the latter borrowed at the bank $1500 to use in paying Lewis, and kept the appointment with plaintiff at Rawlins, where she paid to the attorneys for Lewis the amount due him. The deed from Lewis to plaintiff was then delivered, and Mrs. Wilson received from plaintiff a warranty deed which recited the consideration of $1495, the amount so paid, and on its face purported without reservation or condition to convey the plaintiff's land to French and Mrs. Wilson. It is reasonably certain that this deed was prepared by plaintiff's attorney who was present with his client during the performance of the acts which closed the

transaction. The plaintiff himself testifies that he has no recollection of the deed, and does not claim that any note, mortgage or other writing was given or even suggested either to evidence his indebtedness or to secure its payment. He says that he simply gave Mrs. Wilson his patents and other muniments, telling her to keep them as security. However, by his petition he alleges the execution and delivery of the deed, and of course cannot be heard to deny that he did in fact sign and deliver it. There was no writing in the nature of a defeasance or option to repurchase, and except the plaintiff himself, no person present, not even his attorney, recalls any word or act to indicate that the deed was given for any purpose other than that expressed in it. At this time the plaintiff in writing agreed to pay the taxes for 1909, which were then delinquent, and to complete some ditch work on the land which is referred to as ''the property this day conveyed'' to French and Mrs. Wilson. The deed was recorded the day of its date and delivery.

Plaintiff then went back to the land where he stayed until July, when he harvested the hay and sold it to a neighbor who testified that plaintiff told him he had sold the land to French and taken a lease of it. French, hearing of the sale of the hay, ousted the plaintiff from the land by some sort of a criminal proceeding, and since that time defendants have had possession of the land, paying all taxes and receiving all rents and profits. There was some litigation over the right to the purchase money for the hay crop of 1910, and it was proved that plaintiff as a witness then claimed that he never gave the deed in question here, and that his signature thereto had been forged. He kept to that contention for several years, and until the commencement of the present action he seems never to have made the claim that the deed was intended as a mortgage or as security.

There was testimony that after the giving of the deed the plaintiff made other statements inconsistent with his claim that he had the rights and obligations of a mortgagor, and

also testimony that French made statements inconsistent with his claim of absolute ownership.

Evidence as to the value of the land was conflicting and, if defendants' witnesses were believed by the court, justi-, fied a finding that it was worth no more than the amount of plaintiff's indebtedness to Lewis. That it was not at that time worth a great deal more is to be inferred from the futility of plaintiff's efforts to find some one else willing to step into Lewis' shoes. (Noble v. Stravens (Wash.) 206 Pac. 840.) Much later, and not long before the commencement of this action, the land took on a large speculative value on the discovery of oil in the vicinity.

The principal contention of the plaintiff, as plaintiff in error here, is that the judgment is not sustained by sufficient evidence. In the trial court the question of fact for decision was the issue as to the intention with which the deed was given. Here, the question is whether there was substantial evidence to support the finding of the trial judge upon that issue. We have undertaken to state the main evidentiary facts without too much detail but fully enough to show that there was sufficient evidence to support the finding against the plaintiff by the trial court, and under our repeated holdings we will not in such case disturb the judgment on this ground. (Slothower v. Hunter, 15 Wyo. 189, 204, 88 Pac. 36; Hunt v. Laramie, 26 Wyo. 160, 168, 181 Pac. 137.)

We think the evidence requires no analysis or extended comment. The defendants who took the deed testified positively that they bought the property. In this, they are supported by the language of the deed itself; the failure of the plaintiff to produce any substantial evidence of any contemporary act or writing to contradict it, and by the absence of any writing or other satisfactory evidence to show a continuing debt. The parties had no previous business or social relations, were dealing at arm's length, both being familiar with the usual formalities of transactions of borrowing and lending, and the plaintiff having the benefit of

the presence and advice of an attorney of his own choosing. We should not care to say that in the circumstances the decision of the trial court ought to be disturbed even if the issue were one that might have been decided for plaintiff on a mere preponderance of the evidence. And this is not such an issue, for it is now the unanimous holding of the courts that to establish that an absolute conveyance, unaccompanied by any written stipulation for reconveyance, was intended to operate as a mortgage, the evidence of that intention must be clear, unequivocal and convincing. The authorities on this point are so numerous and uniform that we cite only the texts where the cases are collected. (27 Cyc. 1025; 19 R. C. L. 263; 1 Jones on Mortgages, § 335; 3 Pomeroy on Equity Jurisprudence, § 1195; Note to L. R. A. 1916 B, 192.)

It is hardly to be argued that the trial court erred in holding that the plaintiff's evidence failed to meet this test.

Counsel for plaintiff in error seem to contend that if the testimony leaves it in doubt whether the deed was intended as an absolute conveyance or as a mortgage, the court should declare it a mortgage. The cases cited do not support the proposition, and it requires only a moment's reflection to see that such a rule would render uncertain every title by deed. Many of the cases hold that where a doubt arises as to whether the transaction was intended as a mortgage or a conditional sale a court of equity will be inclined to declare it a mortgage, but with such cases we are not now concerned.

A certified copy of a lease of the land by French was offered in evidence for the purpose of proving that French agreed thereby to oust plaintiff from the premises. An objection to the offer was sustained, and the ruling is assigned as error. In as much as it was admitted at the trial that plaintiff was in possession of the land until he was ousted as hereinbefore stated, and that he was so ousted by proceedings initiated by French, we fail to see how the lease had any bearing on any disputed point, and its exclusion was not error.

It is also contended that the court erred in admitting evidence of oral statements by plaintiff, made after the delivery of the deed, which were offered and received as admissions inconsistent with his later claim that the deed was intended as a mortgage. It is argued that the statements were of no value as evidence because they could not inform the court of the intention of the parties at the time. Though such statements are not considered a very high class of evidence unless they be proved with certainty and precision (Greenleaf on Ev., § 200), the authorities raise no question as to their admissibility, but only as to the weight to be given to them. Of course, in a case like this, the character of the questioned instrument must be determined by the intention of the parties at the time it was executed and delivered. That intention, being established, cannot be changed by the later declarations of the parties. Their subsequent acts and statements are, however, admissible, not to show a change in the character of the instrument, but because they tend in some degree to show the original intention. (27 Cyc. 1016, 1028; note to L. R. A. 1916 B, 329, et seq.)

Near the conclusion of the direct examination of the plaintiff, at about 10.30 o'clock in the morning, he became somewhat halting in his answers, and his counsel, suggesting that plaintiff was not mentally and physically fit to proceed with his testimony, asked a recess of court until the afternoon. The plaintiff being questioned in regard to his condition, it was disclosed that he was suffering pain from his teeth which were being treated; that he had been kept awake the night before by the trouble, and was still suffering. Thereupon, at 10.45, the court took a recess for 15 minutes, after which the direct examination was resumed and concluded, the witness still hesitating somewhat in his answers. His counsel then requested that cross-examination be deferred until after the noon recess, and on the refusal of the court to grant the request, saved an exception. The cross-examination was then proceeded with, and so far as

we can judge from the record the witness was able then fully to understand and intelligently to answer the questions asked him.    The granting or refusal of a request of this kind must, of course, be left very largely to the discretion of the trial judge who sees the party and is able from his appearance and conduct to form an opinion as to his condition.    In this instance, we see nothing to cause us to believe that there was any abuse of discretion in the refusal to grant the request, or that the plaintiff's testimony would have been any different if the request had been granted.

Other errors in the admission or exclusion of evidence were alleged in the motion for a new trial, but are not argued in the brief, and require no discussion by us.

The judgment of the District Court is affirmed.

*Affirmed.*

Potter, Ch. J., and Blume, J., concur.